<div style="margin-left:2em">
FAUNTLEROY'S
HEIRS
vs
CROW'S HEIRS.
</div>

---

CHANCERY.         Fauntleroy's Heirs *vs* Crow's Heirs.

Case 37.                    ERROR TO THE LINCOLN CIRCUIT.

*Husband and wife. Dismission of suits. Writs rf error.*

Oct 8.         CHIEF JUSTICE EWING delivered the opinion of the Court.

The case stated.

In 1786, James Harrod commenced a suit in Chancery against John Crow, in the Supreme Court for the District of Kentucky, to compel Crow to surrender to the complainant's superior equity, his elder legal title to a part of 400 acres of land, including a place called the Sinking Spring, and embracing now a portion of the town of Danville. The case was removed to the Danville District Court, and from thence to the Lincoln Circuit Court in 1803. An interlocutory decree was rendered in favor of the complainant's heir, Margaret Harrod, (he having died,) in 1804, and a final decree in 1805. Crow's heirs,

(he having died,) appealed to this Court, and the decree of the Circuit Court reversed in 1808, (*Hardin's Rep.* 435.) On the return of the case, a survey was made under an order of Court, in pursuance to the direction of this Court, and report made, and a decree rendered at the August term, 1809, directing the defendants to convey 170 acres of the land to John Fauntleroy and Margaret Fauntlerey, (the said John having intermarried with said Margaret.) Commissioners were also appointed to value improvements, &c. At the succeeding term, in February 1810, the decree of the former term was set aside, on the motion of the complainant, and a decree rendered directing a conveyance to Margaret Fauntleroy alone, and Commissioners appointed to assess rents and value improvements. These Commissioners made a report, which was quashed and a second assessment and report made, by which the improvements were valued at $7131 85, the rents at $36, leaving a balance against complainant of $7095 85. The complainant filed exceptions to the report, but no decision is made thereon. At the May term, 1811, the following order was made: "Ordered, that this suit be dismissed by the direction of the complainant."

To reverse this order, various persons claiming to be the heirs of Margaret Fauntleroy, have prosecuted this writ of error.

The order, according to its literal import, must mean that the suit was dismissed by the direction of Margaret, the heir of James Harrod, in whose name the suit was originally instituted. She, at the time of the order, was the only complainant known on the record. The suit had never been revived in the name of her husband, nor any suggestion made of her marriage. nor does it appear *when she married*, nor is there any intimation of her intermarriage with John Fauntleroy to be found in the record, except the casual assertion of the fact in the decree which was rendered at the August term, 1809, and which was set aside at the subsequent term. She being the only complainant, and the suit being dismissed by the *"direction* of the *complainant*," to preserve the integrity of the record, it must be implied that she appeared in Court

Where a suit is dismissed by order of the complainant, no writ of error lies to reverse the orde of dismissal.

and directed the suit to be dismissed. If, therefore, she had the power to dismiss it, the suit having been dismissed by her act, consent, and direction, she or her heirs have no right to complain of the dismissal as an error of the Court, or to reverse an order made at her instance and request.

That she had the power to dismiss we cannot doubt. As a *feme sole* her right was unquestionable, nor can we doubt that she possessed the power to do so as a *feme covert,* and most certainly with the assent of her husband. Indeed it is said that she should join her husband with her in the prosecution of a suit for her lands, and the omission to do so is a good ground of abatement, as she, by her intermarriage, has parted with her means to pay the costs: (*Reaves' Domestic Relations,* 126, 129–30.) If her suit, upon this ground, may be abated, surely she may dismiss it, of her own accord. We know of no rule of law or reason which would preclude a *feme covert* from dismissing her suit, especially if not opposed by her husband, who may be made liable for her costs. If she may sue, surely she may withdraw the suit; if she cannot, then is her condition, which should rather be favored by the Chancellor, rendered worse than other litigants. They, at any time during the progress of their suit, may withdraw from the contest, but she is compelled to proceed however ruinous the prospect may be to her and her husband.

A decree against a *feme covert* or infant as complainant, is as conclusive upon them as upon others, and they, as well as others, should be allowed, by a dismissal, to escape from the consequences of such a decree. Nor are we apprised of any rule which requires the privy examination of a *feme* by the Court, to ascertain whether it is or is not to her interest to dismiss; and if such a rule existed, as it is made on a collateral motion affecting her interest only, and which the opposite party cannot successfully oppose, it should perhaps, be presumed, from the order of dismissal, that every preliminary step authorizing the order, had been taken, and the order was rightly made.

*A feme covert* has the right to dismiss a suit brought to obtain her rights derived through her father with the assent of her husband.

A decree against a *feme covert* or an infant, is as conclusive against them as against adult persons.

But we are referred to a paper which purports to have been written and signed by John Fauntleroy, addressed to Samuel Davis, Esq. Stanford, and which is copied at the foot of the record, and is certified by the Clerk as filed in the papers of the suit, and reads as follows:

FAUNTLEROY'S
HEIRS
vs
CROW'S HEIRS.

"Dear. Sir—Mr. McIlvoy has wrote me a letter this morning and says Mr. J. Haggin returned from Court yesterday, and informed him the suit between Harrod's heirs and Crow's heirs was not dismissed, if not, please to dismiss it and *lift* the *bonds* which James Harrod gave to Stephen Langford, and assigned to John Crow by Langford, which is the agreement by Mr. McIlvoy and Mr. Cockran, and bring the bonds with you. I remain your sincere friend,             JOHN FAUNTLEROY."

*May 25th*, 1811."

This letter bears date the same day that the order was made dismissing the suit. But when or by whom it was filed, or whether it is a genuine letter from John Fauntleroy, the husband of the complainant, does not appear. And whether it should be regarded as any part of the record, may be doubted. But regarding it as a genuine letter from the husband of the complainant, addressed to and received by Davis, as her counsel in the cause, there is nothing in it contradictory to the true import of the order of dismissal, or necessarily irreconcilable with the conclusion that the order was made by the *direction* of the *complainant*, the wife of Fauntleroy. She may have appeared in Court and given the direction, and the husband may have written the letter. Both acts may have been true, and if true, they only prove a concurrence of both husband and wife in the dismissal of the suit. And if the acts were irreconcilable, we cannot, consistently with the unimpeachable verity due to the record, ascribe the action of the Court to the direction of a different person than the one to whom the order of the Court, upon its face, and according to its literal import ascribes it. If then the letter and order taken together, imply that the dismissal was made by the consent and direction of both husband and wife, we cannot doubt that the order of dismissal was rightfully made, and cannot be reversed by the wife or her heirs, for any error on the face of the order.

A husband and wife may, by their concurrant act, dismiss a suit brought in right of the wife, and the heirs of the wife are bound by such order, and the consequences growing out of it.

FAUNTLEROY'S
HEIRS
vs
CROW'S HEIRS.

May not the husband dismiss a suit brought by the wife before coverture or pending after coverture to recover in her right.
—Qu.
Indeed it may be well questioned whether the husband alone might not dismiss the suit of the wife, whether he be made a party or not, especially if the suit be one in which he has a right to be joined with his wife as a party, which is the case in a suit for the recovery of the wife's land: (*Reeves Domestic Relations,* 126.) He is responsible for costs and liable to respond in damages out of his own estate, for the value of improvements directly by the decree, if he be a party to the suit, and collaterally but certainly if he be not a party. If this be so, then would he be made the subordinate of his wife in the prosecution of suits, and subject to her control in a matter affecting deeply his interests, and by which his estate might be involved in irreparable ruin.

The dismissal of the wife's suit for land, is not tantamount to a conveyance of her title, any more than a failure to sue would be tantamount to a conveyance. Either might have the effect to mature into a valid title the adversary claim. Yet the husband is not bound to join with his wife in a suit, and his failure to do so cannot be charged upon him as conveying away his wife's land without her consent. So if he be not bound to sue, it would seem he is not bound to prosecute a suit which he finds at his intermarriage with her, depending in her name; he may have good reasons for not suing, and so he may have good reasons for not persevering in the prosecution of a suit which he finds pending in his wife's name, having a prudential eye to the interest of *his wife's estate as well as his own.* And indeed, from the facts exhibited in this record, as it now stands, it may be presumed that he and his wife both had abundant reasons for dismissing this suit. We incline, therefore, to the opinion that *he* had a right to dismiss the suit, and had the dismissal been made at his instance and upon his motion alone, that it would not be error for which this Court can reverse.

If the wife has been defrauded out of her rights by her husband, or by others in combination with him, that matter can only be made appear by an original proceeding, in which all parties interested will have an opportunity to be heard.

We have not deemed it necessary to consider, nor do we determine what may be the effect of the order of dismissal upon the rights of the complainant or her heirs, in the prosecution of another suit for the same land, nor what may be its effect upon the decrees rendered at prior terms of the Court; we only decide that there is no error in the order of dismissal, for which this Court can reverse the same.

The decree of the Circuit Court dismissing the suit is, therefore, affimed with costs.

*Bradley and Robertson* for plaintiffs: *Harlan & Craddock and Goodloe* for defendants.